# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-80740-CIV-ALTMAN/Brannon

**RENETTE JEAN-BAPTISTE** *on behalf of*
**KEVENS JEAN-BAPTISTE**,

    *Plaintiff*,

v.

**GERMAINE JONES** and
**CITY OF BOYNTON BEACH**,

    *Defendants*.
_____/

## ORDER

**THIS MATTER** comes before the Court on the Defendants' Joint Motion for Summary Judgment (the "Motion") [ECF No. 104].[1] On July 8, 2019, the Plaintiff filed both his Response in Opposition (the "Response") [ECF No. 108] and his Statement of Disputed Facts (the "Pl.'s SOF") [ECF No. 107]. The matter ripened on July 15, 2019, when the Defendants filed their Reply (the "Reply") [ECF No. 109].

## THE FACTS

In 2014, Kevens Jean-Baptiste was a thirteen-year-old boy attending Congress Middle School in Boynton Beach, Florida. *See* Pl.'s SOF Ex. 2 at 37–40. He stood less than five feet tall and weighed just over seventy pounds. *See* Pl.'s SOF ¶ 55. On the morning of May 8, 2014, he boarded the bus to school. *See* Defs.' SOF ¶ 1. On that bus ride, some of the students began throwing eggs towards the front of the bus. *See id.* ¶ 2. Most of these eggs landed around the driver

---

[1] The Defendants also filed a Statement of Undisputed Facts (the "Defs.' SOF") [ECF No. 105].

of the bus, Jacquy Prime, and splattered against the windshield, blocking the driver's view of the road. *See id.* ¶¶ 2, 8, 16–18. In response to the ruckus, Mr. Prime pulled the bus over and called the police. *See id.* ¶ 2.

The first officers to arrive were Cynthia Rivera and Jason Viscome. *See id.* ¶ 5. Next came Officers Jermaine Jones and Fabrice Jeanniton. *See id.* When the officers asked the driver to identify who had thrown the eggs, Mr. Prime pointed to two students: Damon Scruggs and the Plaintiff. *See id.* ¶ 7. Officer Rivera recognized the Plaintiff from a past encounter. *See id.* ¶¶ 9, 22.

In consultation with Prime, the officers decided to remove the Plaintiff and Scruggs from the bus. *See id.* ¶¶ 15, 21; Pl.'s SOF ¶ 21. Once this decision was made, Officer Rivera first removed Scruggs from the bus without incident. *See* Defs' SOF ¶ 24. The officers—Rivera and Jones—then got back onto the bus and instructed the Plaintiff to come to the front. *See id.* ¶ 26. At some point while he was still on the bus, the Plaintiff was handcuffed. *See generally* Videos; *see also* Pl.'s SOF ¶ 21. Because the aisle of the bus was not wide enough for two people to stand side-by-side within it, the Plaintiff "grazed" Officer Jones as he passed him. *See* Pl.'s SOF ¶ 32. The Defendants refer to this contact as a "chest bump." *See* Defs. SOF ¶ 32.[2] Responding to this "graze," Officer Jones lifted the Plaintiff off the ground from behind by wrapping his right arm around the Plaintiff's shoulder area and pulling him up. *See* Defs.' SOF ¶¶ 35–38. While the Defendants refer to this maneuver as a "bear hug," *see generally* Mot., the Plaintiff calls it a "chokehold." *See generally* Resp.[3] Either way, Officer Jones removed the Plaintiff from the bus

---

[2] "Yeah. He did touch him. Chest-butt [sic] means like his touch. Well, basically Officer Jones in the stomach area." Rivera Dep. [ECF No. 105-2] 55:22–24.

[3] *See also* Jean-Baptiste Dep. [ECF No. 105-1] 34:1–6 ("I was small, I was a little kid, I was like 50, 60 pounds. He used his advantage. He grabbed me, turned me, squeezed me, lifting me up,

2

and sat him next to Scruggs on the grass beside the road. *See* Defs.' SOF ¶¶ 39, 44; *see also* Notice of Conventional Filing (the "Videos") [ECF No. 77].[4]

With both Scruggs and the Plaintiff seated on the grass, Officer Jeanniton walked up to the Plaintiff, grabbed him by the shoulders, and physically lifted him into a standing position. *See* Defs.' SOF ¶¶ 44–45; *see also* Videos. At this, the Plaintiff began cursing at the officers. *See* Defs.' SOF ¶¶ 46–47; Pl.'s SOF ¶ 28. Now standing and handcuffed, the Plaintiff, while talking with Officer Jeanniton, leaned his four-foot-eleven, seventy-pound frame forward and made some light contact with Officer Jeanniton's torso. *See id.* ¶ 53; *see also* Videos. Officer Jones, who saw this contact, then walked over to the Plaintiff and performed what the Defendants now refer to as a "leg sweep." *See id.* ¶ 55. Essentially, Officer Jones kicked the Plaintiff violently in the back of the legs, causing him to fall backwards.[5] *See id.* ¶ 57; *see generally* Videos. After the "leg sweep," Officer Jeanniton took the Plaintiff to school. *See* Defs.' SOF ¶ 60. The Plaintiff complained of lower back pain following the incident, *see id.* ¶ 70, and has been treated for back pain since, *see* Pl.'s SOF ¶ 63.

## THE LAW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the record, including depositions, documents,

---

down the aisle, *choking me* and putting me down in the bus. He basically roughed me, he lifted me up by my neck . . . ." (emphasis added)).

[4] As used in this Order, the term "Videos" refers to seven cell-phone video clips the Plaintiff has filed conventionally. Because the Videos, for the most part, depict the same incident, the Court sees no need to identify them individually.

[5] Officer Jones says that he did not intend for the Plaintiff to fall. *See id.*

3

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Id.*

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See e.g.*, *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence that a genuine issue of material fact precludes summary judgment. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); FED. R. CIV. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). Notably, assessments of credibility—no less than the weighing of evidence—are jury questions not susceptible of disposition at summary judgment. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). The Court must analyze the record as a whole—and not just the evidence the parties have singled out for consideration. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). If there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL

5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## ANALYSIS

The Plaintiff levies two claims against the Defendants. *See* Complaint [ECF No. 1-4] at 4–7. In Count I, he alleges a state-law battery against the City of Boynton Beach. *See id.* at 5–7. In Count II, he charges Officer Jones with excessive force, in violation of 28 U.S.C. § 1983. *See id.* at 4–5. The Defendants move for summary judgment on both counts. *See generally* Mot. For ease of analysis, the Court will address the Motion as to each count in reverse order.

### I. Excessive Force against Officer Jones

The Defendants argue that Officer Jones' actions were constitutional for three reasons. *See generally* Mot. *First*, they say that Officer Jones' use of a "bear hug" was proportionately tailored to the danger the Plaintiff presented. *See id.* at 9–11. *Second*, they suggest that the amount of force Officer Jones deployed in executing the "leg sweep" was, all things considered, "reasonable." *See id.* at 11–12. *Third*, they contend that the Plaintiff's injuries were (and are) *de minimis*. *See id.* at 12–15. And, even if the Court were inclined to find that Officer Jones acted unconstitutionally, the Defendants insist that he would nevertheless be entitled to qualified immunity because his actions did not violate any "clearly established" law. *See id.* at 4–9.

#### a. Excessive Force

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). To determine whether the force the officers used was excessive, a court must determine "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or

5

motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citations omitted) (cleaned up). This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Lee*, 284 F.3d at 1197 (quoting *Graham*, 490 U.S. at 396) (cleaned up). In assessing "objective reasonableness," the Court looks to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Each of these *Graham* factors weighs against Officer Jones here. *First*, the crime at issue was not, strictly speaking, severe. After all, while throwing eggs on a school bus does, in a very technical sense, constitute an "assault," *see* Defs.' SOF ¶ 67, the incident to which Officer Jones responded was plainly non-violent. And nothing the Plaintiff did after the officers arrived changed this reality. After all, neither his verbal disobedience towards Officer Rivera nor his "grazing" of Officer Jones in the center aisle, *see* Pl.'s SOF ¶ 32, constituted "severe" acts of criminality.

*Second*, the Plaintiff posed no immediate threat to the officers' safety—not at the time of the "bear hug" and certainly not in the moments before the "leg sweep." The Plaintiff, again, was a thirteen-year-old who stood just four feet, eleven inches tall and weighed seventy pounds. *See* Pl.'s SOF ¶ 55. He had no weapon, and, at the time of the "bear hug," he was inarguably confined, without egress, to the center aisle of a school bus. At the time of the "leg sweep," moreover, he had already been detained and handcuffed. There is, in short, *at the very least* a genuine issue of material fact as to whether a reasonable officer at the scene would have been justified in fearing for his or her own safety. *See Graham*, 490 U.S. at 396. As the Eleventh Circuit has made clear, an individual can be a "nuisance but not a threat." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) (finding that officer violated plaintiff's constitutional rights when he used pepper spray

against plaintiff who was under arrest for crime of minor severity, who was handcuffed, and who posed no threat to the officers).

*Third*, the Plaintiff never attempted either to resist arrest or to evade arrest by flight in any meaningful way. To the contrary, the undisputed evidence establishes only that (1) the Plaintiff was verbally abusing the officers and that (2) the Plaintiff made some very light contact with two of the officers. *See* Defs.' SOF ¶¶ 12–14, 22, 23, 27–31, 52–54; *see also* Videos. While the parties do dispute whether the Plaintiff, just before the "bear hug," "resisted" arrest by refusing to follow commands, *compare* Defs.' SOF ¶ 29 *with* Pl.'s SOF ¶ 29, at summary judgment, this dispute must be resolved in the Plaintiff's favor, *see Whelan*, 2013 WL 5583970 at *2. In any event, even if the Plaintiff had "resisted arrest" before the "bear hug," his verbal resistance would not have justified the subsequent "leg-sweep." *See Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (finding that, under some circumstances, a plaintiff may be subjected to excessive force "after he stopped resisting"). And the unmistakable video evidence shows that the Plaintiff was not resisting arrest when Officer Jones walked up to him from behind and, while he was handcuffed, kicked him violently to the ground. *See generally* Videos.

Officer Jones also argues that he is entitled to summary judgment because the Plaintiff's injuries were *de minimis*. *See* Mot. at 12–15. But that is not the law. Instead, as the Eleventh Circuit has explained, excessive force claims turn, not on the extent of a plaintiff's injuries, but on the amount of force the defendant applied. *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). "To conclude . . . that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry, which is the nature of the force." *Id.* (citations omitted) (cleaned up); *see also Lee*, 284 F.3d at 1200 (finding that "objectively unreasonable force does not become reasonable simply because the fortuity of

7

the circumstances protected the plaintiff from suffering more severe physical harm. Slamming the head of a handcuffed, subdued arrestee against the trunk of a car is objectively unreasonable and clearly unlawful").

For this reason, the Eleventh Circuit has instructed district courts to assess the "extent of the injury inflicted" as one of three non-exhaustive factors, which include: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017) (the "*Lee* factors") (citation omitted). None of these *Lee* factors supports Officer Jones' position here.

*First*, there was no "need for the application of force," either at the time of the "bear hug" or just before the "leg sweep." Starting with the "bear hug," while the Plaintiff may have been mouthing off at Officer Jones as he was walking down the aisle, *see* Defs.' SOF ¶ 27, there is no dispute that he was, in fact, walking off the bus—just as the officers had commanded him to do. *See* Defs.' SOF ¶ 32. And, while verbal sparring, when coupled with physical non-compliance, may justify a physical response from an officer, there is a genuine dispute of material fact as to whether Officer Jones needed to "bear hug" a 70-pound child with a big mouth.[6] The "leg sweep" was even less necessary. Again, when Officer Jones effectuated that maneuver, the undisputed evidence shows that the Plaintiff had been removed from the bus and placed on the grass adjacent to the street—with his hands cuffed behind him. *See generally* Videos. If there was some need to stop the Plaintiff from "bumping" into the officers again, *see* Defs.' SOF ¶¶ 52–54, that need could

---

[6] Of course, the Defendants argue that, in addition to being verbally abusive, the Plaintiff physically "chest bumped" Officer Jones in the bus aisle. *See* Defs.' SOF ¶ 32. The Plaintiff disputes this characterization. *See* Pl.'s SOF ¶ 32. Again, at summary judgment, the Court must resolve this dispute in the Plaintiff's favor. *See, e.g.*, *Allen*, 121 F.3d at 646.

have been addressed just as effectively—and with no additional force—by simply sitting the Plaintiff back on the grass.

*Second*, there is a genuine issue of material fact with respect to the *amount of force* Officer Jones used. Indeed, since neither situation required the use of *any* force, a rational jury could find that the amount of force Officer Jones deployed in both instances was (almost) necessarily excessive. But, even if either situation did call for *some* force, the Court cannot say definitively that the amount of force Officer Jones used was commensurate with that need. Starting with the "bear hug," the parties dispute whether Officer Jones placed his arms around the Plaintiff's neck or whether he simply grabbed him by the shoulders. *Compare* Defs.' SOF ¶ 35 ("bear hug") *with* Pl.'s SOF ¶ 35 ("choke hold"). The video evidence, though inconclusive, does not contradict the Plaintiff's telling. *See generally* Videos. And, notably, Officer Jones conceded in his deposition that, at one point, he did place his hands "above the shoulders." Jones Dep. [ECF No. 107-2] 143:18–23. In any case, at summary judgment, the Court must view the evidence in the light most favorable to the Plaintiff. *See, e.g.*, *Allen*, 121 F.3d at 646. The "leg sweep," again, is even more straightforward. There is a genuine issue of material fact as to whether the amount of force Officer Jones deployed in executing that "leg sweep" was excessive. *See generally* Videos.

*Third*, while it is true that, as the Defendants point out, the Plaintiff did not suffer life-threatening injuries, their assertion that he suffered only *de minimis* injuries is incorrect. The undisputed evidence establishes that the Plaintiff made multiple trips to the school nurse, that he visited a doctor on several occasions, and that he received various treatments for his back pain. *See* Defs.' SOF ¶¶ 63, 73, 76; Pl.'s SOF ¶¶ 63, 69, 71, 73, 76. And, in any event, the first two factors can supersede the third—particularly where, as here, the crime at issue was relatively minor

9

and the officer used grossly disproportionate force after the suspect was detained. *See Lee*, 284 F.3d at 1200; *see also Saunders v. Duke*, 766 F.3d at 1270.

In sum, these three *Lee* factors, taken together with the three *Graham* factors, support the Plaintiff's view that there is a genuine dispute of material fact with respect to whether Officer Jones used excessive force to subdue him.

This conclusion is bolstered by other, similar cases from this Circuit. In *Brown v. Haddock*, No. 5:10-cv-130, 2011 WL 1655580 (N.D. Fla. May 2, 2011), for instance, two officers responded to a fistfight between minor cousins. *See id.* at *1. The plaintiff—the mother of one of the cousins—approached the officers (apparently to inquire about the fight). *See id.* When the officers did not answer her questions to her satisfaction, the plaintiff and one of the officers "chest-bumped," after which the officer ordered her to leave the scene. *See id.* When she refused, that officer told her she was under arrest. *See id.* At that point, she stopped arguing with the officer and offered up her hands for cuffing. *See id.* As she did so, however, the officer kicked her in the back of the legs—the very same "leg-sweep" at issue here—and thus knocked her to the ground. *See id.* The court denied the officer's motion for summary judgment on both Fourth Amendment and qualified immunity grounds. *See id.* at *6–7. As here, the *Brown* Plaintiff had both verbally sparred with an officer and then, in the defendant's telling, refused to comply with his commands. And—again, as in this case—the *Brown* Plaintiff and the officer then "chest bumped." Finally, as here, the officer effectuated a "leg sweep" against a detained individual.

But the cases are also dissimilar in two salient ways—both of which redound to the Plaintiff's benefit. *First*, whereas the plaintiff in *Brown* was a full-grown adult, the Plaintiff here is a middle school child—and a small child at that. *Second*, and more importantly, the *Brown*

Plaintiff had not yet been handcuffed when the officer swept at her leg. Here, by contrast, the Plaintiff had been handcuffed and thus could not defend himself against the fall.

On balance, then, the Court finds unpersuasive the Defendants' view that there exist no genuine issues of material fact with respect to whether Officer Jones' actions were excessive.

### b. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Priester*, 208 F.3d at 925 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this way, the defense of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To qualify for the immunity, a government official must show that the challenged actions were committed within the scope of his discretionary authority. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). If he can do so, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

To overcome the qualified immunity defense, a plaintiff must show that the official deprived him of a constitutional right that was "clearly established" at the time of the alleged offense. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). This requirement "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." *id.* at 206. For purposes of qualified immunity in this District, only decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Supreme Court of Florida constitute "clearly established" law. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

Under some circumstances, however, where "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw," the official is not entitled to the defense of qualified immunity. *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997). This is because "[t]he easiest cases don't even arise." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (citation omitted). "There has never been," for instance, "a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages." *Id*. (citation omitted). To meet this exception to the "clearly established law" requirement—or, put another way, to show that the unconstitutionality of the official's conduct was "readily apparent"—a plaintiff must demonstrate that the official's conduct "was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point." *Mattox*, 127 F.3d at 1419. But, as the Eleventh Circuit has made clear, this exception applies only where "every reasonable officer in [the official's] position [would] conclude the force was unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *as amended*, 14 F.3d 583 (11th Cir. 1994).

There is no dispute that Officer Jones was acting in his discretionary capacity. *See generally* Resp. (failing to argue that Officer Jones was acting other than in his discretionary capacity). To circumvent qualified immunity, then, the Plaintiff bears the burden of establishing that Officer Jones violated his "clearly established" constitutional right to be free from the excessive use of force. *See Saucier*, 533 U.S. at 201.

In the Plaintiff's view, at the time in question, the law was clear that an officer cannot deploy either a "chokehold" or a "leg sweep" to subdue a compliant civilian.

12

### i. The "Chokehold"

But the Plaintiff has identified no case—and the Court has found none—for the proposition that an officer violates a compliant individual's constitutional rights whenever that officer employs a momentary "chokehold." *See* Resp. at 6–7. Instead, the Plaintiff cites two district court decisions—*Marshall v. West*, 559 F. Supp. 2d 1224 (M.D. Ala. 2008), and *Paul v. Bradshaw*, No. 12-81381-CIV, 2013 WL 12084298 (S.D. Fla. Aug. 7, 2013)—which, it goes without saying, cannot "clearly establish" law in this Circuit. *See McClish*, 483 F.3d at 1237.

For their part, the Defendants rely on the Eleventh Circuit's decision in *Post v. City of Ft. Lauderdale*. *See* 7 F.3d at 1559–60. In that case, the plaintiff was standing next to a group of individuals—among them, police officers—who were investigating the restaurant he managed. *See id.* at 1556. When the plaintiff asked one of the officers to turn down the volume on his radio, the officer told the plaintiff to be quiet. *See id.* When the plaintiff repeated his request, the officer informed him that he was under arrest. *See id.* Hearing this, the plaintiff raised his arms—in an attempt, he said, to offer his hands to be handcuffed—at which point the officer instructed him to "stop resisting arrest, spun him around, placed him against a display case, applied a chokehold, and handcuffed him." *Id.* Notably, the officer did not persist in the "chokehold" for an excessive amount of time. *See id.* The Eleventh Circuit concluded that the officer was "entitled to qualified immunity because it was not clearly established that the amount of force he used outside the restaurant was unlawful." *Id.* at 1560.

Here, as in *Post*, the Plaintiff—by his telling—complied with a lawful command in a way that (again, according to the Plaintiff) the officer misinterpreted as disobedience. Notably, neither case involved any evidence that the "chokehold"—or, as the Defendants here refer to it, the "bear hug"—was deployed for an excessive amount of time. And, in both cases, the officer employed

the "chokehold" only for the purpose of effectuating a lawful maneuver: handcuffing the plaintiff (as in *Post*) or removing him from the bus (as here).

The Plaintiff has failed to cite even a single case—either from the Eleventh Circuit, the Supreme Court of the United States, or the Supreme Court of Florida—for his position that a police officer violates a person's constitutional rights when, after reasonably misinterpreting an abusive detainee's compliance as disobedience, he employs a momentary "chokehold" to remove that detainee from an escalating situation. "The touchstone of qualified immunity is notice . . . . [A] reasonable official [must] understand that his conduct violates that right." *Moore v. Pederson,* 806 F.3d 1036, 1046–47 (11th Cir. 2015) (citation omitted). In short, the purported "excessiveness" the Plaintiff relies on has not been "clearly established." Nor was that "excessiveness" in any way "readily apparent" at the time Officer Jones employed the "chokehold" in this case. After all, "in light of binding precedent such as *Post*, [the officer employing the chokehold] was not on notice that he was acting unlawfully." *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 670 (11th Cir. 2016).[7]

Because Officer Jones is entitled to qualified immunity for the "chokehold," the Court **GRANTS** his motion for summary judgment on that claim.

### ii. The "Leg Sweep"

By contrast, the Plaintiff does manage to identify a long litany of cases that, he says, "clearly establish" the unconstitutionality of an officer's use of a "leg sweep" against a handcuffed detainee. *See* Resp. at 8 (citing *Skelly v. Okaloosa Cty. Bd. of Comm'rs*, 456 F. App'x 845 (11th Cir. 2012); *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008); *Galvez v. Bruce*, 552 F.3d 1238

---

[7] Indeed, the events described in the Plaintiff's Complaint took place in 2014—two years *before* *Marantes*. In other words, if the *Marantes* Defendants were not on notice in 2016 that their conduct was unconstitutional, then neither could Officer Jones have been in 2014.

(11th Cir. 2008); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

In *Skelly*, the officers walked a handcuffed and compliant detainee into the Okaloosa County Detention Center. *See* 456 F. App'x at 846. As the detainee entered the building, "she was immediately knocked down from behind without provocation and repeatedly shocked by a Taser until she lost consciousness." *Id.* Each officer deployed his taser between seven and ten times. *See id.* at 847. The district court rejected the officers' contention that they should be enshrouded in qualified immunity and denied their motions for summary judgment, *see id.*—and the Eleventh Circuit affirmed, *id.* at 849.[8]

In *Hadley*, the plaintiff—who was high on cocaine—entered a supermarket and began shouting "Help me, help me." *See* 526 F.3d at 1327. Officers arrived on the scene, drew their guns, and ordered the plaintiff to freeze. *See id.* What happened next was apparently disputed. But, taking the facts in the light most favorable to the plaintiff, the court concluded that the officer then "struck [the plaintiff] in the stomach even though he was not struggling or resisting." *Id.* at 1330. This finding was complicated by the plea of guilty the plaintiff had entered to a charge, stemming from this very same incident, of resisting arrest. *See id.* at 1331. According to the defendants, the plaintiff's related guilty plea foreclosed his argument in the civil action that he had not resisted. *See id.* The court disagreed, finding it "possible that [the plaintiff] was punched then resisted, or even that he resisted first, but was punched after he stopped resisting." *Id.* On these facts, the court said, the officer was not entitled to qualified immunity. *See id.* at 1334. Again, the Eleventh Circuit

---

[8] Notably, *Skelly* was decided under the Eighth Amendment's more rigorous excessive force standard. *See id.* at 847.

15

affirmed, holding that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Id.* at 1330.

In *Galvez*, the defendant-officer approached the plaintiff—who had been charged with petit theft—at his place of business. *See* 552 F.3d at 1240. When the plaintiff refused to return the stolen goods, the officer attempted to grab his arm and handcuff him. *See id.* Although the plaintiff apparently resisted, the officer ultimately handcuffed him. *See id.* And, after being handcuffed, the plaintiff became compliant. *See id.* Nevertheless, the officer "forcefully dragged [the plaintiff] out of the clinic, and with all his power and might began slamming the left side of [the plaintiff's] chest into the corner edge of the carport . . . . [The officer] slammed [the plaintiff's] chest several times while [he] cried out in pain and asked for help from passing motorists." *Id.* The district court granted the officer's motion for qualified immunity and summary judgment, but the Eleventh Circuit reversed. In doing so, the court explained that "qualified immunity is not available to officers who subject arrestees to significant force after the arrest ha[s] been fully effected, the arrestee completely secured, and all danger vitiated." *Id.* at 1245 (citations omitted) (cleaned up).

In *Lee*, a petite female plaintiff was pulled over for a routine traffic stop by a much larger male officer. *See* 284 F.3d at 1190–91. Unprovoked, the officer grabbed the plaintiff's wrist, pulled her out of the car, yanked her arm, and shoved it against her back. *See id.* at 1191. With the plaintiff now fully outside the car, the officer shoved her against the car door, frisked her, and (finally) put her in handcuffs. *See id.* The officer then led the plaintiff to the back of the car and slammed her face against the trunk. *See id.* The plaintiff never resisted arrest. *See id.* Despite undisputed evidence that the plaintiff had suffered no permanent injuries to her head, the Eleventh Circuit found it "abundantly clear" that the officer had "used force that was plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate under *Graham*." *Id.* at 1198. And, citing

16

*Slicker*, the court refused to grant the officer's request for qualified immunity. *See id.* at 1199–1200.

In *Slicker*, the plaintiff went to the police station to inquire about a pending complaint he had filed. *See* 215 F.3d at 1227. On his way out of the station, he was handcuffed and arrested for disorderly conduct, "at which time the officers slammed his head against the pavement and knocked him unconscious." *Id.* But, before falling into unconsciousness, the plaintiff remembered being kicked in the back of the head—a memory corroborated by a witness to the arrest. *See id.* at 1227–29. The Eleventh Circuit rejected the officer's request for qualified immunity. *See id.* at 1233.

Again, "[t]he touchstone of qualified immunity is notice . . . . [A] reasonable official [must] understand that his conduct violates that right." *Moore*, 806 F.3d at 1046–47 (citation omitted). In light of these cases, any reasonable officer, placed in Officer Jones' shoes, would have known that kicking a handcuffed, seventy-pound detainee to the ground—a detainee who, just moments earlier, had been seated compliantly on the curbside—was plainly excessive. This right—the right of a handcuffed and compliant detainee to be free from the excessive and unnecessary use of a violent "leg sweep"—was "clearly established" at least as early as the Eleventh Circuit's decision in *Slicker* (and, if not there, then certainly by that court's subsequent decisions in *Lee*, *Galvez*, and *Hadley*).

Indeed, even had these cases not "clearly established" the unconstitutionality of such a "leg sweep," the sweep went "so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997). Officer Jones' conduct, in short, lies "so

17

obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of [his] conduct [is] readily apparent to the official, notwithstanding the lack of caselaw." *Id.*

To summarize, then: it is unconstitutional for a police officer to "leg sweep," violently and from behind, a handcuffed and compliant detainee who has been accused only of a minor crime. And there is, at least, a genuine dispute of material fact regarding whether Officer Jones' use of a "leg sweep" against the Plaintiff violated that rule. As such, with respect to the "leg sweep," Officer Jones' motion for summary judgment is **DENIED**.

## II. Battery against the City of Boynton Beach

The Plaintiff also brings a state-law battery claim against the City of Boynton Beach. *See* Compl. Count I. Under Florida Statutes § 768, the State of Florida and its subdivisions have waived sovereign immunity for any intentional tort committed in the scope of an officer's employment, unless that officer acted in bad faith or with malicious purpose. *See* Fla. Stat. § 768.28(9)(a). Florida Law recognizes the intentional tort of battery by a police officer. *See generally City of Miami v. Sanders*, 672 So.2d 46, 47 (Fla. 3d DCA 1996).

When excessive force is used during an arrest, "the ordinarily protected use of force by a police officer is transformed into a battery." *Id.* at 47 (citing *Mazzilli v. Doud,* 485 So.2d 477, 481 (Fla. 3d DCA)). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Sanders*, 672 So. 2d at 47 (citing *Dixon v. State*, 101 Fla. 840 (Fla. 1931)). But police officers are "entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is 'clearly excessive.'" *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006).

The parties agree that this "clearly excessive" standard under Florida law is coextensive with the Fourth Amendment's "excessive force" analysis. *See* Mot. at 15 ("The analysis of the existence of excessive force for a state law battery claim in Florida is identical to the analysis under the Fourth Amendment." (citations omitted)); Resp. at 13–18 (discussing federal § 1983 cases as support for state-law battery claim). And the Eleventh Circuit seems to agree with this proposition. *See, e.g.*, *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006) (dismissing Florida battery claim on same grounds as federal § 1983 claim); *accord Andrade v. Miami Dade Cty.*, No. 09-23220-CIV, 2011 WL 4345665, at *7 (S.D. Fla. Sept. 16, 2011) (discussing federal cases in evaluating a claim that an officer's conduct was "clearly excessive" under Florida law).

The Court has already concluded that Officer Jones is not entitled to summary judgment on the Plaintiff's claim that the "chokehold"[9] and the "leg sweep" constituted "excessive force" under the Fourth Amendment. *See supra* Sec. I. For the same reasons, then, the City is likewise not entitled to summary judgment on the Plaintiff's state-law battery claim. *See Sullivan*, 161 F. App'x at 911 ("[For] the same reasons we concluded that the force used by [the officer] clearly excessive under the law of this Circuit, we also conclude that it was [] clearly excessive according to the similar standard set forth under Florida law.").

******

Accordingly, the Court hereby

**ORDERS and ADJUDGES** that the Defendants' Motion for Summary Judgment [ECF No. 104] is **GRANTED in part** and **DENIED in part** as follows:

---

[9] To clarify: While the Court has found that Officer Jones' use of the "chokehold" may well have constituted "excessive force" under the Fourth Amendment, it nevertheless has concluded that Officer Jones is entitled to qualified immunity for this "chokehold."

1. The Defendants' Motion is **DENIED** as to Count I – Battery against the City of Boynton Beach.

2. The Defendants' Motion is **GRANTED in part** and **DENIED in part** as to Count II – Excessive Force against Officer Jones. The Motion is **GRANTED** as to Officer Jones' use of the "chokehold." The Motion is **DENIED** as to Officer Jones' use of the "leg-sweep."

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 27th day of November 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record